UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRYAN CORPORATION        )
                         )
        Plaintiff,       )
                         )
    v.                   )          CIVIL ACTION
                         )          NO. 12-10446-MLW
CHEMWERTH, INC.,         )
                         )
        Defendant.       )


**MEMORANDUM OF DECISION AND ORDER ON
DEFENDANT'S MOTION TO DISMISS
COUNT V (FRAUD) OF COMPLAINT FOR DAMAGES**

December 14, 2012

DEIN, U.S.M.J.

## I. INTRODUCTION

This action arises out of an agreement pursuant to which the plaintiff, Bryan Corporation ("Bryan Corp."), agreed to purchase the pharmaceutical ingredient Tobramycin Sulfate ("TS") from the defendant ChemWerth, Inc. ("ChemWerth"). Bryan Corp. claims that in order to induce it to purchase TS from ChemWerth and to develop products that could expand ChemWerth's TS market in the United States, ChemWerth falsely represented to Bryan Corp. that it would provide certain documents required by the United States Food and Drug Administration ("FDA") so that Bryan Corp. could obtain FDA approval of its TS products. Bryan Corp. has asserted claims against the defendant for breach of contract (Count I), breach of implied covenant of good faith and

fair dealing (Count II), promissory estoppel (Count III), negligent misrepresentation (Count IV), fraud (Count V), and violation of Mass. Gen. Laws ch. 93A (Count VI).

This matter is presently before the court on "Defendant's Motion to Dismiss Count V (Fraud) of Plaintiff's Complaint for Damages" (Docket No. 15) brought pursuant to Fed. R. Civ. P. 12(b)(6).[1] Therein, ChemWerth contends that Bryan Corp. has failed to plead fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b), and has failed to meet the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), thereby warranting the dismissal of the fraud claim in its entirety. In the alternative, ChemWerth moves that the plaintiff be ordered to provide a more definite statement of its claim pursuant to Fed. R. Civ. P. 12(e). The parties have consented to the Magistrate Judge's final jurisdiction pursuant to 28 U.S.C. § 636(c) for purposes of this motion.

For all the reasons detailed herein, this court finds the pleading of fraud to be sufficient, and the Motion to Dismiss (Docket No. 15) is DENIED. The court also DENIES the defendant's alternative request for a more definite statement.

## II. STATEMENT OF FACTS

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all

---

[1] While the defendant also purports to bring the motion to dismiss pursuant to Fed. R. Civ. P. 12(f)(2), that Rule allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) "is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint[.]" 5C Wright & Miller, Federal Practice and Procedure: Civil 3d § 1380 at 391 (2004). Therefore, that Rule will not be addressed further.

reasonable inferences.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  Applying this standard to the instant case, the facts relevant to the motion to dismiss are as follows.

## Background

Bryan Corp. "provides high quality medical devices and innovative pharmaceuticals to the global medical community."  Compl. ¶ 8.  In 2006, Bryan Corp. was interested in developing new products or uses of TS that could receive FDA approval.  Id. ¶ 13.  ChemWerth held itself out as an agent for Chinese pharmaceutical ingredient manufacturers, and described itself "as having substantial expertise in ensuring that the manufacturers it represents in China produce pharmaceutical ingredients and documentation that meet FDA requirements."  Id. ¶ 11.  Bryan Corp. contacted ChemWerth in connection with its plan to develop products with TS.  Id. ¶ 14.  ChemWerth allegedly represented that it would obtain and file with the FDA the documentation necessary to show that the TS manufactured in China by Chongqing Daxin Company Limited, Inc. ("Daxin") met FDA standards.  Id. ¶¶ 15-16.  ChemWerth's failure to obtain such documentation forms the basis of the complaint.  See id. ¶ 1.  Thus, Bryan Corp. summarizes its claim as follows:

> 1. This action arises from Defendant ChemWerth's fraud, misrepresentation and other misconduct in connection with the sale of a pharmaceutical ingredient (Tobramycin Sulfate) to Plaintiff Bryan Corp.  To induce Plaintiff to buy Tobramycin Sulfate from ChemWerth and to develop products that could expand ChemWerth's Tobramycin Sulfate market in the United States, ChemWerth represented and promised to Plaintiff that ChemWerth

>would provide certain documents regarding the Tobramycin Sulfate that Plaintiff required to obtain FDA approval of Plaintiff's Tobramycin Sulfate products.
>
>2.   ChemWerth's representations and promises were false, and ChemWerth knew or should have known that it would not and could not provide the necessary documents.  Ultimately, ChemWerth did not provide the documents, and suggested that Bryan Corp. could cure the problem through misleading filings with FDA.  Bryan Corp. refused to participate in such a scheme, and has lost millions of dollars that it spent seeking FDA approval of Tobramycin Sulfate products in reliance on ChemWerth's promises and representations.

Id. ¶¶ 1-2.  As detailed herein, Bryan Corp. makes numerous factual assertions in support of its claim.

### The Alleged Misrepresentations

Bryan Corp. contends that ChemWerth made a number of misrepresentations about its ability and intention to produce documentation to satisfy FDA requirements. Specifically, but without limitation, Bryan Corp. alleges that ChemWerth states in its public website that it "collaborat[es] with manufacturers in establishing appropriate protocols and methodologies to prepare a sound and complete Drug Master File." Id. ¶ 12.  A Drug Master File ("DMF") is a file which contains the information necessary to establish that the active pharmaceutical ingredients ("API") in a product, in the instant case TS, is made in accordance with FDA requirements, including Good Manufacturing Practices ("GMPs").  Id. ¶ 10.

Bryan Corp. alleges that on or about November 29, 2006, during a meeting in China, ChemWerth promised and represented that, if Bryan Corp. purchased TS API

through ChemWerth, ChemWerth would obtain and file with the FDA all necessary documentation regarding the manufacture, testing, and characteristics of the TS, including a DMF.  Id. ¶¶ 16-18.  Bryan identifies the participants in the meeting by name, as well as the contents of a slide presentation given by ChemWerth on that date, which also includes alleged misrepresentations on which the complaint is based.  Id. ¶¶ 17-18.  Bryan Corp. also claims that on July 17, 2007, ChemWerth representative Al Chau wrote an email to Bryan Corp. representative Dr. Alan Waldman, quoted in the complaint, stating that "[w]e have the expertise" to make TS and that ChemWerth could produce batches of TS API in a manner that would generate documentation showing that the TS API was manufactured in accordance with FDA requirements.  Id. ¶ 19.  Bryan Corp. further describes representations made by ChemWerth in a draft Supply Agreement submitted to Bryan Corp. on or about July 19, 2007, to the effect that the TS API that ChemWerth would supply to Bryan Corp. "shall be manufactured in a FDA approved facility in accordance to drug master file and in accordance with current GMP's."  Id. ¶ 21.  The draft Supply Agreement further warranted that the manufacturer of the TS had filed a DMF to which Bryan Corp. would have access.  Id. ¶ 22.

Bryan Corp. alleges that "in reliance" on these representations, it "purchased substantial quantities of TS API from ChemWerth and engaged in a process to develop and obtain FDA approval of products made from that TS."  Id. ¶ 23.  Nevertheless, Bryan Corp. alleges, these representations were false and ChemWerth simply continued to lead Bryan Corp. on.  Again, specifically, but without limitation, ChemWerth provided

Certificates of Analysis to Bryan Corp., which were intended to represent that the TS API Bryan Corp. purchased from ChemWerth could produce a DMF acceptable to the FDA. Id. ¶¶ 24-25.  However, according to Bryan Corp., ChemWerth later admitted that it knew that these Certificates of Analysis were not reliable.  Id. ¶¶ 25, 54.

Similarly, in a May 20, 2008 teleconference between Dr. Waldman and Ms. Flynn of ChemWerth, Ms. Flynn represented that ChemWerth would "pick up" the DMF from the TS manufacturer in "three months."  Id. ¶ 31.  On June 23, 2008, Ms. Flynn represented to Dr. Waldman in an email that "[t]he Chemwerth Regulatory group is working hard on getting all of the DMF preparations."  Id. ¶ 32.  In the complaint, Bryan Corp. identifies other oral and written communications on July 1, 2008, March 3, 2010, March 18, 2010, March 26, 2010, May 4, 2010, September 21, 2010 and October 20, 2010 in which ChemWerth assured Bryan Corp. that the DMF was on track and that progress was being made.  Id. ¶¶ 33-42.  However, on December 1, 2010, Mr. Peng of ChemWerth sent Dr. Waldman an email stating that "ChemWerth has not been able to get enough support to amend our DMF" but that it was "working on a plan."  Id. ¶ 43.  Bryan Corp. was allegedly "shocked" at the suggestion that ChemWerth might not produce the DMF, a suggestion that indicated that the prior representations about ChemWerth's progress were false.  See id. ¶44.

According to the allegations of the complaint, on December 30, 2010, February 1, 2011 and March 11, 2011, named representatives of ChemWerth made additional misrepresentations to Bryan Corp. that the DMF would be filed.  Id. ¶¶ 46-48.  On March

21, 2011, ChemWerth's president allegedly "finally admitted that ChemWerth would not file a DMF for the Daxin TS API." Id. ¶ 49.  Thereafter, ChemWerth allegedly proposed a fraudulent scheme for substituting another manufacturer's DMF in order to get FDA approval.  Id. ¶¶ 50-53.  Bryan Corp. refused to agree to the plan.  Id. ¶ 55.

Additional facts will be provided below where appropriate.

### III.   ANALYSIS

#### A.   Standard of Review

#### Rule 12(b)(6)

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.  Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party.  Cooperman, 171 F.3d at 46.  Dismissal is only appropriate if the pleadings, so viewed, fail to support "'a plausible entitlement to relief.'"  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief.  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.'"  Id. (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)) (internal citations omitted). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.'" Id. (quoting Iqbal, 556 U.S. 679, 129 S. Ct. at 1950). "This second principle recognizes that the court's assessment of the pleadings is 'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief.'" Id. (quoting Iqbal, 556 U.S. 679, 129 S. Ct. at 1950) (internal quotations and citation omitted; alterations in original).

### Rule 9(b)

As a general statement, a civil complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For that reason, "[g]reat specificity is ordinarily not required to survive a Rule 12(b)(6) motion." Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir.1992). However, an exception to this general rule is codified in Fed. R. Civ. P. 9(b), which provides a heightened pleading standard for fraud claims. See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) ("Rule 9(b)'s heightened pleading standard applies to state law fraud claims asserted in federal court."). Thus, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

"This heightened pleading standard is satisfied by an averment of the who, what, where, and when of the allegedly false or fraudulent representation." Rodi v. S. N.E. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (internal quotation omitted).  The First Circuit has further noted that "the specificity requirement extends only to the particulars of the allegedly misleading statement itself." Id. (citing Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004)).  "The other elements of fraud, such as intent and knowledge, may be averred in general terms." Id.  Nevertheless, the complaint must "also identif[y] the basis for inferring scienter." Cardinale, 567 F.3d at 13.  Applying these principles to the instant case compels the conclusion that the motion to dismiss must be denied.

### B. Sufficiency of Allegations - Fed. R. Civ. P. 9(b)

There can be little dispute that the complaint alleges in detail the "who, what, where, and when" of the statements on which Bryan Corp. relies in its claim of fraud.  Each allegation identifies the speaker, the date, the location and the context of the challenged statement.  Nevertheless, ChemWerth challenges the sufficiency of the allegations on the grounds that Bryan Corp. has not explained "why" these statements were false or "how" they were misrepresentations.  It also contends that the pleadings are insufficient because the plaintiff has not alleged "specific facts that make it reasonable to believe that ChemWerth *knew* that its statements were materially false or misleading when they were made." Def. Mem. (Docket No. 16) at 3.  These arguments are not persuasive.

As an initial matter, ChemWerth overstates the pleading requirement of this common-law fraud claim. As noted above, so long as the complaint identifies the basis for inferring scienter, the elements of intent and knowledge may be averred in general terms. Wilder v. Toyota Fin. Servs. Am. Corp., 764 F. Supp. 2d 249, 260 (D. Mass. 2011), and cases cited. Here, the allegations are that ChemWerth made affirmative misrepresentations about information within its control — the progress and likelihood of filing the DMF. That these allegations were false was evidenced by, *inter alia* the admission that ChemWerth knew that the Certificates of Analysis it had given to Bryan Corp. were unreliable, and its statement on March 21, 2011 that ChemWerth would not be filing the DMF. In addition to the direct allegation that ChemWerth knew that its representations were false when made, Compl. ¶ 89, the detailed allegations regarding the number of times ChemWerth assured Bryan Corp. that progress was being made and that the DMF would be filed, when it was never filed, "sufficiently identified a basis from which scienter may be inferred." Wilder, 764 F. Supp. 2d at 260 (finding allegations sufficient to infer scienter for fraud claim where plaintiff alleged that defendant expressly agreed that plaintiff would have the right to cure a breach of contract, despite knowledge of company policy prohibiting the cure). Bryan Corp. is not required to plead anything more in order to state a claim in accordance with Rule 9(b).

"To prevail on a claim of fraudulent misrepresentation under Massachusetts law, the plaintiff must show that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and

-10-

that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" Pearce v. Duchesneau Group, Inc., 392 F. Supp. 2d 63, 72-73 (D. Mass. 2005) (quoting Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 68 (1st Cir. 2005) (additional citations omitted).  "Under Massachusetts law, it is 'sufficient to show proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; actual intent to deceive on the part of the defendants need not be shown.'"  Id. at 73 (quoting Russell v. Cooley Dickenson Hosp., Inc., 437 Mass. 443, 458-59, 772 N.E.2d 1054, 1066 (2002)).  Moreover, "[a] statement, though couched in terms of opinion, may constitute a statement of fact if it may reasonably be understood by the reader or listener as implying the existence of facts that justify the statement (or, at least, the non-existence of any facts incompatible with it)."  Rodi, 389 F.3d at 14, and cases cited.  Here, the allegations about the status of actions taken by ChemWerth in connection with obtaining the DMF, which were subsequently proven to be false, are sufficient to withstand the motion to dismiss.

ChemWerth's other challenges to the fraud claim are equally unavailing.  Thus, ChemWerth objects that the complaint "sets forth no facts to support a motive on the part of ChemWerth to defraud or mislead Bryan Corp. — facts which would likely demonstrate ChemWerth's intent, or support a reasonable belief that ChemWerth knew its statements were materially false or misleading at the time they were made."  Def. Mem. at 4.  However, there is no obligation that Bryan Corp. plead motive, and as noted above,

Bryan Corp. does not need to prove an intent to deceive in order to support its fraud claim. Bryan Corp. has met its burden of alleging sufficient facts from which a fraudulent intent may be inferred. See Massachusetts v. Mylan Labs., 608 F. Supp. 2d 127, 156-57 (D. Mass. 2000) (summary judgment denied where "the defendants made false statements, and the subject of those statements was quite susceptible to knowledge by the defendants," as a result of which "there is sufficient evidence for a jury to find that the defendants knew that their statements . . . were false, and as such, there still exists a genuine issue as to whether the defendants acted knowingly").

ChemWerth also challenges the sufficiency of the allegations regarding Bryan Corp.'s reasonable reliance on ChemWerth's representations. See Def. Mem. at 4. However, the complaint is replete with allegations that Bryan Corp. expended significant funds seeking FDA approval based on ChemWerth's repeated representations that it would obtain the documentation needed to obtain FDA approval, and that it purchased significant amounts of TS API in reliance on ChemWerth's representations. See, e.g., Compl. ¶¶ 23, 26-27, 58. The fact that such reliance was reasonable can be inferred at this stage from ChemWerth's representations about its own expertise and experience, as well as its continued assurances about its ability to obtain and file the DMF. See, e.g., id. at ¶¶ 11-12, 15-18. Despite ChemWerth's protestation to the contrary, see Def. Mem. at 5, a fair reading of the complaint gives notice to ChemWerth of the claims against it, which is "a main purpose of [Rule 9(b)]." See Hayduk v. Lanna, 775 F.2d 441, 444 (1st

Cir. 1985). For all these reasons, defendants' motion to dismiss Count V for failure to comply with Rule 9(b) is denied.

### C. Sufficiency of Allegations - Fed. R. Civ. P. 8(a)(2)

ChemWerth has further moved to dismiss the claim of fraud on the grounds that Bryan Corp. has failed to satisfy the requirement found in Fed. R. Civ. P. 8(a)(2) that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This argument is without merit. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 677-78, 129 S. Ct. at 1949. Under this standard, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id., 556 U.S. at 678, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1974) ("only enough facts to state claim to relief that is plausible on its face" are required)). Where, as here, the plaintiff has met "the heightened burden under Rule 9(b), [it has] undoubtedly met the lower threshold of "notice pleading" under Rule 8(a)(2)." Proctor v. Metro. Money Store Corp., 645 F. Supp. 2d 464, 476 n.3 (D. Md. 2009). See also Clifton v. I-Flow Corp., No. 11 C 627, 2011 WL 5077615, at 3 (N.D. Ill. Oct. 26, 2011) (holding that where fraud claim satisfies Rule 9(b), a negligent misrepresentation claim based on the same misrepresentations "surely satisfies the less stringent pleading requirements of Rule 8(a)(2)").

### D. Request for a More Definite Statement

Finally, ChemWerth has moved for a more definite statement under Fed. R. Civ. P. 12(e). This request is denied, and any further details the defendant requires can be explored through discovery.

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." Swierkiewicz v. Sorema, NA, 534 U.S. 506, 514, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002), overruled in part on other grounds by Twombly, 550 U.S. 544, 127 S. Ct. 1955. However, as the Rule itself provides, a more definite statement is only appropriate where the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Where, as here, the complaint satisfies the heightened pleading requirement of Rule 9(b), "the complaint pleads enough detail to give adequate notice for a responsive pleading, [and] there is no cause to grant defendant's motion [for a more definite statement]." Cash v. Frederick & Co., Inc., 57 F.R.D. 71, 77 (E.D. Wis. 1972).

## IV. ORDER

For all the reasons detailed herein, this court finds the pleading of fraud to be sufficient, and the Motion to Dismiss (Docket No. 15) is DENIED. The court also DENIES the defendant's alternative request for a more definite statement.

       / s / Judith Gail Dein
       Judith Gail Dein
       U.S. Magistrate Judge