UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRYAN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CHEMWERTH, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | CIVIL ACTION |
| | ) | NO. 12-10446-MLW |
| CHEMWORTH, INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WALDMAN BIOMEDICAL | ) | |
| CONSULTANCY, INC. and | ) | |
| DR. ALAN A. WALDMAN, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER
ON CHEMWERTH, INC.'S MOTION TO COMPEL**

October 23, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

This action arises out of an agreement under which the plaintiff, Bryan

Corporation ("Bryan"), agreed to purchase the pharmaceutical ingredient, Tobramycin

Sulfate ("TS"), from the defendant, ChemWerth, Inc. ("ChemWerth").  Bryan alleges that

in order to induce it to purchase TS from ChemWerth and to develop products that could expand ChemWerth's TS market in the United States, ChemWerth falsely represented to Bryan that it would provide certain documents, including what is known as a Drug Master File ("DMF"), that were necessary for Bryan to obtain approval for its TS products from the United States Food and Drug Administration ("FDA").  By its claims against ChemWerth, Bryan is seeking to recover more than $2 million, which it claims to have lost seeking FDA approval of its TS products in reliance on ChemWerth's allegedly false promises.

ChemWerth denies that it misled Bryan about its ability to provide necessary documentation, and has asserted various affirmative defenses and counterclaims in response to the plaintiff's claims.  In addition, ChemWerth has asserted third-party claims against Bryan's long-time consultant, Waldman Biomedical Consultancy, Inc., and its principal, Dr. Alan A. Waldman (collectively, "Waldman").  By its third-party claims, ChemWerth alleges that it was Waldman's failure to disclose information to Bryan which caused the plaintiff to suffer damages.  It also alleges that Waldman made misrepresentations to ChemWerth, which resulted in damages to that party as well.

The matter is presently before the court on "ChemWerth's Motion to Compel Production of Documents Improperly Withheld as Privileged by Bryan Corp., Waldman Biomedical Consultancy, Inc. and Dr. Alan A. Waldman" (Docket No. 98).  By its motion, ChemWerth is seeking an order compelling the production of various documents that have been withheld by Bryan and Waldman pursuant to the attorney-client privilege

and/or the work product doctrine.  ChemWerth argues that it is entitled to the documents because Bryan and Waldman have not established that any attorney-client privilege or work product protection applies and has not been waived.  Moreover, to the extent the documents constitute work product, ChemWerth argues that it is entitled to production because it has shown that it has a substantial need for the materials and cannot obtain substantially equivalent information in the absence of undue hardship.  After consideration of the parties' written submissions[1] and their oral arguments, and for the reasons detailed herein, this court finds that the challenged documents are protected from disclosure under the work product doctrine.  Accordingly, ChemWerth's motion to compel is DENIED and it is not necessary to determine whether the documents also fall within the scope of the attorney-client privilege.

## II.  FACTUAL BACKGROUND

The following facts are relevant to the defendant's motion to compel.[2]

_____

[1]  Because the privileges at issue belong to Bryan rather than to Waldman, Bryan filed an opposition to the motion to compel that addresses all of the withheld documents.  Waldman did not file a separate opposition to ChemWerth's motion.  (See Pl. Opp. Mem. (Docket No. 106) at 1 n.1).

[2]  The facts are derived from the following materials submitted by the parties in connection with ChemWerth's motion to compel: (1) the Declaration of Alyson J. Dilena, Esq. ("Dilena Decl.") and the exhibits attached thereto ("Def. Ex. __") (Docket No. 100); (2) the exhibits attached to Bryan's Memorandum in Opposition to ChemWerth's Motion to Compel ("Pl. Ex. __") (Docket No. 106), including but not limited to, the Declaration of Daniel E. Johnson ("Johnson Decl.") set forth in Exhibit A (Docket No. 106-1), the Declaration of T. Mark Flanagan, Jr. ("Flanagan Decl.") set forth in Exhibit B (Docket No. 106-2), and the Declaration of Bryan Abrano ("Abrano Decl.") set forth in Exhibit E (Docket No. 106-5); and (3) the exhibit attached to Chemworth's Reply to Bryan's Opposition to ChemWerth's Motion to Compel Production of Documents Improperly Withheld as Privileged ("Def. Supp. Ex.") (Docket No.

**<u>Bryan's Retention of Litigation Counsel</u>**

The events giving rise to Bryan's claims in this action occurred between December 2005, when Bryan first contacted ChemWerth about the possibility of purchasing TS, and March 2011, when ChemWerth allegedly informed Bryan that it would not provide it with the documents necessary for Bryan to obtain FDA approval of its TS products.  (<u>See</u> Am. Compl. (Docket No. 76) ¶¶ 75-76; Countercl. (Docket No. 80) ¶ 18.[3]  In March 2011, Bryan sought legal assistance from T. Mark Flanagan, Jr., an attorney at McKenna Long & Aldridge LLP ("MLA"), regarding its dispute with ChemWerth.  (Flanagan Decl. ¶ 4).  At the time Bryan approached MLA, ChemWerth had refused Bryan's demand that the defendant compensate it for damages arising out of ChemWerth's alleged failure to obtain a DMF.  (<u>Id.</u> ¶ 6).  Thus, while Attorney Flanagan was hopeful that the parties could resolve their differences, both he and Bryan recognized that there was a prospect for litigation between Bryan and ChemWerth.  (<u>Id.</u> ¶ 4; Abrano Decl. ¶ 5).  In fact, Attorney Flanagan described the case as "FDA litigation" when he listed it as a new matter in MLA's computer system.  (Flanagan ¶ 5).  He also asked his partner, Daniel Johnson, to assist him on the case due to Attorney Johnson's expertise in civil litigation. (<u>Id.</u>; Johnson Decl. ¶ 4).

---

121).

[3]  ChemWerth's counterclaims can be found beginning on page 26 of Defendant ChemWerth, Inc.'s Answer, Affirmative Defenses, & Counterclaims to Plaintiff's First Amended Complaint for Damages (Docket No. 80).

**Waldman's Role in Pre-Litigation Activities**

Attorneys Flanagan and Johnson determined that in order to understand the dispute between Bryan and ChemWerth, and to provide legal advice to Bryan, they needed the assistance of someone who could understand and interpret Bryan's application to the FDA, the FDA's requirements and practices concerning new drug applications, DMFs and other data, and the impact that ChemWerth's alleged failure to provide documents had on Bryan's application to the FDA and the amount of money spent on the application.  (Flanagan Decl. ¶ 7; Johnson Decl. ¶ 6).  They also determined that they would need someone to interpret all of the relevant communications involving ChemWerth, Bryan, Bryan's manufacturers, Bryan's testing laboratories, and the FDA. (Id.).  Because neither MLA nor Bryan had the relevant expertise, and Attorney Flanagan knew that Bryan had relied on Waldman to provide FDA regulatory expertise in the past, the lawyers asked Waldman to provide them with assistance.  (Flanagan Decl. ¶¶ 8-9; Johnson Decl. ¶ 8; Abrano Decl. ¶¶ 7-8).  This was consistent with MLA's past practice of relying on consultants and others with specific expertise to assist it with matters involving the FDA.  (Flanagan Decl. ¶ 8; Johnson Decl. ¶ 7).

Dr. Waldman and his company have served as Bryan's agent with respect to FDA matters for over a decade, and they served as Bryan's exclusive agent in its dealings with ChemWerth and the FDA regarding the TS project.  (Abrano Decl. ¶ 3).  After Waldman agreed to assist MLA in connection with the dispute between Bryan and ChemWerth, Waldman became Bryan's exclusive agent with respect to that matter as well.  (Id. ¶ 4).

Acting at the direction of Bryan's President, Bryan Abrano ("Abrano"), and Bryan's counsel from MLA, Waldman took on the task of translating and interpreting various communications involving Bryan, ChemWerth and the FDA, including communications in which Dr. Waldman had participated in his capacity as Bryan's agent on the TS project.  (Id. ¶ 8; Flanagan Decl. ¶ 9; Johnson Decl. ¶ 8).  According to Bryan's counsel, all of Waldman's work, as well as all of the attorneys' communications with Waldman, occurred for the purpose of enabling MLA to provide legal advice to Bryan.  (Flanagan Decl. ¶ 10; Johnson Decl. ¶ 9).  It also enabled Bryan and MLA to prepare for potential litigation against ChemWerth.  (Id.).

As part of their efforts to prepare for a potential lawsuit, Bryan's counsel exchanged numerous emails with Bryan and /or Dr. Waldman.  (Flanagan Decl. ¶ 12; Johnson Decl. ¶ 11).  They also asked Bryan and Waldman to communicate with each other in order to assist MLA with its investigation, analysis and preparation for potential litigation with ChemWerth.  (Flanagan Decl. ¶¶ 12-13; Johnson Decl. ¶¶ 11-12).  Thus, the attorneys sought and obtained input from Bryan and Waldman regarding issues raised in the dispute with ChemWerth, and asked them to identify documents that might prove important in litigation.  (Flanagan Decl. ¶ 13; Johnson Decl. ¶ 12).  They also sought input regarding drafts of letters and other communications directed at ChemWerth and the FDA.  (See id.).  According to Attorney Johnson, all of these communications reflected "the thoughts and mental impressions of MLA, Bryan Corp. or its representatives prepared because of potential litigation."  (Johnson Decl. ¶ 12).

Bryan ultimately filed its original complaint in this action on March 9, 2012. (Docket No. 1).  Although the complaint was drafted by Bryan's counsel, both Bryan and Waldman assisted MLA in that process.  (Flanagan Decl. ¶ 14; Johnson Decl. ¶ 13).  In particular, Attorneys Flanagan and Johnson sent drafts of the complaint, along with questions or comments, to Bryan and Waldman.  (Id.).  Bryan and Waldman then provided MLA with their thoughts and impressions, including any annotations to the draft complaint.  (Id.).  The plaintiff contends that all of the documents challenged by ChemWerth in its present motion to compel involve these and other communications that took place among Bryan, its counsel, and Waldman after the dispute arose, and were made for the purpose of assisting counsel in preparing for the eventual litigation.  (See Pl. Opp. Mem. (Docket No. 106) at 2).

Both MLA and Bryan viewed Waldman's assistance as indispensable to MLA's ability to provide its client with legal advice regarding its dispute with ChemWerth and its potential communications with the FDA.  (Flanagan Decl. ¶ 11; Johnson Decl. ¶ 10; Abrano Decl. ¶ 9).  In particular, they claim that without Waldman's assistance and expertise, MLA would not have been able to advise Bryan effectively.  (See id.).  They further claim that as a result, they viewed all of MLA's and Bryan's communications with Waldman on these matters, as confidential.  (Flanagan Decl. ¶ 11; Johnson Decl. ¶ 10; Abrano Decl. ¶ 11).  Indeed, both MLA and Bryan understood that only MLA, Bryan and Waldman had access to those communications.  (Id.).

Following ChemWerth's filing of a third-party complaint against Waldman on September 24, 2012, counsel for Bryan and Waldman agreed orally that their clients had a common interest in the case. (Johnson Decl. ¶ 23). They also agreed that any communications between those two parties would be exchanged pursuant to their common legal interest. (Id.). Therefore, although all of the documents which ChemWerth is seeking were created before Waldman retained its own counsel, Bryan took steps to preserve its claims of privilege over those documents in the event they were shared with Waldman's counsel.

### The Present Dispute

During the course of the litigation, Bryan and Waldman produced thousands of pages of documents in response to ChemWerth's document requests. (DiLena Decl. ¶¶ 9-10). To the extent Bryan and Waldman withheld documents based on claims that the documents were protected from disclosure under the attorney-client privilege and/or work product doctrine, they listed those documents on their respective privilege logs and produced those logs to ChemWerth. (See DiLena Decl., Exs. 1-2). By its present motion, ChemWerth is seeking to compel the production of various documents listed on Bryan's and Waldman's privilege logs on the grounds that they have been wrongly withheld.

On July 25, 2013, ChemWerth sent Bryan a letter in which it objected to Bryan's designation of certain documents as privileged, and requested that those documents be produced. (Id., Ex. 6). On August 5, 2013, ChemWerth sent a similar letter to Waldman

in which it requested that all of Waldman's withheld documents be produced. (Id., Ex. 8). Thereafter, the parties engaged in several communications in an attempt to resolve their differences. (See id. ¶¶ 13, 16 & Exs. 7 & 9 thereto; Johnson Decl. ¶¶ 15-17). Significantly, during those communications, Bryan informed ChemWerth that it had discovered mistakes in its privilege log, and would revise its log and produce any documents that were not protected from disclosure. (Johnson Decl., Ex. 3). Additionally, Bryan and Waldman told ChemWerth that they would confer with each other and respond to the defendant's request for documents. (Id. ¶ 17; DiLena Decl. ¶ 16). However, following a delay in that response and a break down in the parties' communications, ChemWerth filed its instant motion to compel. (See Johnson Decl., Ex. 4; DiLena Decl. ¶¶ 18-19).

Bryan has since revised its privilege log in order to correct prior errors and address issues raised by ChemWerth in its motion. (Johnson Decl. ¶¶ 20-21). Furthermore, Bryan has reviewed Waldman's privilege log, including the documents listed therein, and has provided ChemWerth with a revised version of that log as well.[4] (Id. ¶ 24). In

---

[4] ChemWerth complains that as part of its revisions, Bryan designated all of the withheld documents as work product, including documents that had previously been withheld solely on the basis of the attorney-client privilege. (See Def. Reply Mem. at 2). To the extent Chemwerth suggests that Bryan's actions were improper, this court disagrees. As described above, ChemWerth was on notice, before it filed its motion to compel, that there were mistakes in the original designations, and that Bryan and Waldman intended to revisit their privilege logs in light of ChemWerth's assertions that documents had been improperly withheld. (See Johnson Decl. ¶ 17 & Ex. 3 thereto). Accordingly, there was nothing inappropriate about Bryan's decision to review the privilege logs and to revise them in order to accurately reflect the bases for Bryan's and Waldman's claims of privilege.

particular, Bryan has revised Waldman's log in order to indicate which documents are duplicates of documents listed on Bryan's privilege log. (Id.). It has also identified documents which contain Bryan's attorney-client privileged or work product information. (Id.). Bryan has submitted both of the revised privilege logs to this court in connection with its opposition to the motion to compel. (See Johnson Decl., Exs. 1 & 6). As reflected on those logs, Waldman and Bryan have agreed to produce certain documents that were previously withheld. (See id.). All of the remaining documents are designated either as attorney work product or as both attorney work product and attorney-client privileged communications. (Id.).

Additional factual details relevant to this court's analysis are described below where appropriate.

### III.  ANALYSIS

By its motion, ChemWerth is seeking to compel the disclosure of three categories of documents included on Bryan's and Waldman's privilege logs. Those documents consist of (1) communications between Bryan's counsel and Waldman; (2) communications between Bryan's counsel and Bryan that were copied to or shared with Waldman; and (3) documents and communications that were not generated by, received by, or shared with any attorneys. (Def. Mem. (Docket No. 99) at 1). ChemWerth argues that these documents must be produced because they are responsive to its document requests, and because Bryan and Waldman have failed to show that the attorney-client privilege or work product doctrine applies and has not been waived. It further argues that

to the extent the documents constitute work product which has not been waived, it is

nevertheless entitled to production because it has shown that it has a substantial need for

the documents and that it cannot obtain substantially equivalent information by other

means without undue hardship.  For the reasons that follow, this court finds that the work

product doctrine is applicable to all of the documents at issue, and that ChemWerth is not

entitled to production.

### A.   Application of the Work Product Doctrine

Bryan contends that all of the disputed materials are protected from discovery

under the work product doctrine.  The work product doctrine, which was first articulated

by the Supreme Court in Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451

(1947), and has been codified in Fed. R. Civ. P. 23(b)(3), "protects against disclosure of

materials that a party, her attorney, or her representative prepares in anticipation of litiga-

tion[.]"  In re Grand Jury Subpoena, 220 F.R.D. 130, 141 (D. Mass. 2004).  Thus, the

work product doctrine precludes discovery of work that "is reflected . . . in interviews,

statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and

countless other tangible and intangible ways" as long as it was prepared in anticipation of

litigation.  See Hickman, 329 U.S. at 511, 67 S. Ct. at 393.  By extending such protection,

the doctrine "preserves a 'zone of privacy' in which a party, his attorney, and in many

cases his non-attorney 'representative' can prepare for litigation, 'free from unnecessary

intrusion by his adversaries.'"  In re Grand Jury Subpoena, 220 F.R.D. at 141 (quoting

United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)).  As in the case of other

privileges, "[t]he party seeking work product protection has the burden of establishing its applicability." Id. at 140.  For the reasons that follow, this court finds that Bryan has met its burden in this case.

As described above, Bryan has shown that all of the documents set forth in the privilege logs were prepared by Bryan, its counsel at MLA, or Waldman in its capacity as Bryan's agent with respect to the dispute against ChemWerth.  Bryan has also established that the documents were prepared in anticipation of litigation.  In particular, Bryan has presented evidence showing that the documents at issue were created in connection with MLA's investigation, evaluation, and preparation concerning a potential lawsuit against ChemWerth.  Because Bryan has shown that the documents were prepared in order to aid counsel in possible future litigation, they are entitled to protection under the work product doctrine.  See United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 30 (1st Cir. 2009) (noting that work product privilege is designed to protect work done to help counsel in litigating a case).

ChemWerth takes issue with the fact that the documents were exchanged with Waldman at a time when Waldman was not represented by counsel, and that certain communications involving Waldman and individuals working for Waldman did not involve any attorneys.  (See Def. Mem. at 1, 4, 17).  However, as described above, the work product doctrine encompasses documents that are prepared in anticipation of litigation by a party's representative, including a party's consultant or agent.  See Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things

that are prepared in anticipation of litigation or for trial by a party or its representative (including the other party's attorney, consultant . . . or agent)"). Because Waldman was acting as Bryan's agent when the documents were created, its participation in the communications does not defeat application of the work product doctrine even though it was not represented by counsel. Moreover, Waldman's communications, made both in its capacity as Bryan's agent and in anticipation of litigation, are entitled to protection even in the absence of attorney involvement.[5]

### B.    Waiver of Work Product Protection

ChemWerth argues that even if the work product doctrine applies to the documents on the privilege logs, Bryan's voluntary disclosure of those documents to Waldman waived the privilege because Waldman was an adversary or potential adversary to Bryan. (Def. Reply Mem. at 4-7). It further contends that Waldman waived any claim of work product protection because it failed to provide ChemWerth with a privilege log that complied with the requirements of Fed. R. Civ. P. 26(b)(5). (Def. Mem. at 16-18). For the reasons that follow, this court finds that both of these arguments lack merit.

---

[5] It appears that ChemWerth has abandoned its argument that the withheld documents were not prepared in anticipation of litigation because Waldman did not take part in drafting Bryan's complaint. (See Def. Mem. at 15-16; Def. Reply Mem. at 4). To the extent it continues to press this argument, this court finds it unpersuasive. The affidavits submitted by the plaintiff, including the Affidavits of Attorneys Johnson and Flanagan, and the Affidavit of Bryan's principal, Bryan Abrano, establish that Waldman was a critical participant in MLA's evaluation of, and preparation for, Bryan's lawsuit against ChemWerth, and that the documents at issue were prepared in anticipation of that litigation. Therefore, the fact that Waldman did not draft the complaint does not undermine Bryan's claim of work product protection.

## Waiver Based on Disclosure to an Adversary

ChemWerth first contends that Bryan's "disclosure of work product to Waldman waived the privilege because Waldman is an adverse party." (Def. Reply Mem. at 4). Relevant authority establishes that "[t]he work product privilege may be waived through disclosure." See In re Raytheon Sec. Litig., 218 F.R.D. 354, 359 (D. Mass. 2003). However, this court finds that no such waiver occurred in the present case.

Work product protection is waived, not by disclosure to a third person, but "only when documents are used in a manner contrary to the doctrine's purpose[.]" Schanfield v. Sojitz Corp. of Am., 258 F.R.D. 211, 214 (S.D.N.Y. 2009). See also In re Raytheon Sec. Litig., 218 F.R.D. at 359 (considering policies underlying work product privilege in evaluating whether protection has been waived). As courts have explained:

> the work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent. The purpose of the work product privilege is to protect information against *opposing parties*, rather than against *all others* outside a particular confidential relationship, in order to encourage effective trial preparation .... A disclosure made in pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents should be allowed without waiver of the privilege.

In re Raytheon Sec. Litig., 218 F.R.D. at 359-60 (quoting United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980)) (alteration omitted). Accordingly, "a disclosure made in pursuit of . . . trial preparation[,]" such as where the "transferor and transferee anticipate litigation against a common adversary on the same issue or issues,"

should not be deemed a waiver of the work product doctrine.  Am. Tel. & Tel. Co., 642

F.2d at 1299.  On the other hand, waiver will occur where the disclosure is made to an

adversary or potential adversary, and "[does] not take place in the context of a joint

litigation where the parties shared a common legal interest."  United States v. Mass. Inst.

of Tech., 129 F.3d 681, 687 (1st Cir. 1997).

　　　　In the instant case, the record establishes that Bryan's interests are not adverse to

the interests of Waldman, and that Waldman's participation in communications involving

Bryan and its counsel was consistent with the purposes of the work product doctrine.  As

described above, the evidence demonstrates that Waldman was retained in order to assist

Bryan and its counsel in their dispute against ChemWerth, including in their preparation

for litigation against ChemWerth.  It also establishes that Waldman acted as Bryan's

agent throughout the course of Bryan's pre-litigation activities, and that all of the relevant

communications occurred in furtherance of a common strategy against ChemWerth.

"[C]ourts have generally held that where the disclosing party and the third party share a

common interest, there is no waiver of the work product privilege."  Schanfield, 258

F.R.D. at 214 (quoting Merrill Lynch & Co. v. Allegheny Energy, Inc., 229 F.R.D. 441,

446 (S.D.N.Y. 2004)).  Here, there can be no serious dispute that the interests of Bryan

and Waldman were entirely aligned at the time the challenged documents were created.

　　　　ChemWerth nevertheless argues that "Waldman was an adversary or a potential

adversary to Bryan at the time the withheld communications were made" because

"Waldman is ultimately responsible for the failure to develop an FDA approvable [TS]

product for Bryan." (Def. Reply Mem. at 5). However, ChemWerth's argument, which

reflects the claims asserted against Waldman in ChemWerth's third-party complaint, do

not establish that Bryan and Waldman were adversaries or potential adversaries at the

time of the disclosures. Although ChemWerth alleges that Waldman's misrepresentations

to Bryan caused or contributed to cause any losses Bryan may have sustained as a result

of its failure to obtain FDA approval of its products, Bryan has not adopted ChemWerth's

allegations and is not pursuing claims against Waldman. Rather, Bryan maintains that

ChemWerth is responsible for its harm, and it is seeking to hold ChemWerth liable for all

of the damages it allegedly suffered as a result of its reliance on the defendant's alleged

misrepresentations. (See generally Am. Compl.). In fact, the record establishes that after

ChemWerth asserted its claims against Waldman, counsel for Bryan and Waldman orally

agreed that their clients shared a common legal interest and that any subsequent

communications between the parties would be exchanged pursuant to that common

interest in order to maintain their clients' privileges. (Johnson Decl. ¶ 23). Accordingly,

ChemWerth's allegations have not altered Bryan's and Waldman's efforts to pursue a

common legal strategy against a common opponent.

Moreover, ChemWerth's contention that Bryan and Waldman are adversaries is

entirely inconsistent with the allegations set forth in its counterclaim against Bryan.

Thus, although Chemwerth's third-party complaint asserts that Waldman was responsible

for Bryan's alleged losses, in its counterclaim against Bryan, ChemWerth alleges that

Bryan and Waldman both knew that ChemWerth could not provide a DMF for the TS

material that it proposed to sell to Bryan, and that they jointly pursued Bryan's application for approval from the FDA in any event.  (Countercl.  ¶¶ 44-48, 57-66).  It also alleges that Bryan and Waldman conspired to mislead ChemWerth about the acceptability of its TS products, and that they attempted to use ChemWerth as a "pawn" in connection with Bryan's efforts to defraud the FDA.  (See id. ¶¶ 115-125, 153-56).  These allegations, which describe Bryan and Waldman as co-conspirators in a scheme against Waldman, support Bryan's assertion that it shares common legal interests with Waldman and that the parties were not adversaries or potential adversaries at the time they exchanged the disputed documents.

ChemWerth nevertheless argues that Bryan's "disclosure to Waldman has substantially increased the likelihood that such material will end up in the hands of others, despite Bryan's belief that Waldman shared its interests in bringing suit against ChemWerth and would keep the communications confidential."  (Def. Reply Mem. at 6 (quotations and citation omitted)).  "Protection under the work product doctrine, however, is not automatically waived by a third party disclosure.  Rather, work product protection is waived only when documents are used in a manner contrary to the doctrine's purpose, when disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'"  Schanfield, 258 F.R.D. at 214 (quoting Merrill Lynch & Co., 229 F.R.D. at 445-46).  Therefore, the question is not whether the material will end up in the hands of others.  Rather, the critical inquiry "is whether disclosure of documents

protected by the work product doctrine . . . increases the opportunities for potential adversaries to obtain the information." In re Raytheon Sec. Litig., 218 F.R.D. at 360.

Nothing in the record suggests that the disclosure of information to Waldman increased the likelihood that privileged documents would fall into the hands of Bryan's potential adversaries. The evidence shows that Waldman has served as Bryan's agent on FDA matters for more than a decade, and was working as Bryan's exclusive agent with respect to the dispute with ChemWerth at the time the documents were exchanged. (Abrano Decl. ¶¶ 3-4). Where, as here, a transferor and transferee of information share "common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary." Am. Tel. & Tel. Co., 642 F.2d at 1299. Indeed, Waldman's own privilege log illustrates that Waldman withheld the relevant documents from ChemWerth and treated them as privileged. (See Johnson Decl, Ex. 6). Therefore, the evidence belies any suggestion that Bryan waived the privilege by sharing its documents with Waldman.

ChemWerth suggests that the lack of evidence of a confidentiality agreement between Bryan and Waldman supports its assertion that a waiver occurred. (Def. Reply Mem. at 6). However, the absence of such an agreement does not alter this court's conclusion that no waiver occurred. When a transfer of work product information "is conducted under a guarantee of confidentiality, the case against waiver is even stronger." Am. Tel. & Tel. Co., 642 F.2d at 1299-1300. This does not mean, however, that the lack of an agreement defeats work product protection. As long as the parties exchanging

information do not act in a manner that is inconsistent with the doctrine's purpose, the work product privilege will be preserved.  See Schanfield, 258 F.R.D. at 214 ("work product protection is waived only when documents are used in a manner contrary to the doctrine's purpose").

ChemWerth points to an entry on Waldman's privilege log, which indicates that on one occasion, privileged communications and work product material were shared with or generated by Jane Campbell, an independent contractor who was working for Waldman. (Def. Reply Mem. at 6-7).  The defendant argues that there is "no shred of evidence regarding assurances of confidentiality by Ms. Campbell[,]" and that the disclosure of information to her "increases the likelihood that an adversary of Bryan would obtain the information." (Id. at 7).  However, ChemWerth's own allegations in support of its counterclaims indicate that Ms. Campbell worked closely with Waldman on Bryan's TS project, and was involved in communications underlying Bryan's dispute with ChemWerth.  (See Countercl. ¶ 33 (describing statement made by Ms. Campbell regarding difficulty obtaining TS and describing Ms. Campbell as an "employee" of Waldman) ¶ 63 (describing communication from Dr. Waldman to two of his "employees," including Ms. Campbell, regarding quality issues with TS to be supplied by ChemWerth).  Consequently, there is nothing to suggest that she would disclose protected information to Bryan's adversaries.  Rather, the fact that her communication is listed on Waldman's revised privilege log indicates that she maintained such information as confidential.

## **Alleged Failure to Provide Adequate Privilege Log**

ChemWerth also contends that Waldman waived any claim of privilege over the documents listed in its privilege log by failing to comply with Fed. R. Civ. P. 26(b)(5). (Def. Mem. at 16-18). Under Rule 26(b)(5), a party who withholds otherwise discoverable information by claiming that the information is privileged or subject to protection is required to "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). ChemWerth contends that the information contained in Waldman's log is insufficient to enable it to assess Waldman's claims of privilege. This court finds that Waldman's privilege log is adequate and that no waiver occurred.

"A party that fails to submit a privilege log is deemed to waive the underlying privilege claim." In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001). This rule applies both to claims of attorney-client privilege and "in the context of claims of work product privilege." Id. Nevertheless, "[p]rivilege logs do not need to be precise to the point of pedantry." Id. A party asserting a claim of privilege is merely expected "to do the best that he reasonably can to describe the materials to which his claim adheres." Id.[6]

---

[6] Although the First Circuit in In re Grand Jury Subpoena was discussing Fed. R. Civ. P. 45(d)(2), which pertains to claims of privilege over information responsive to a subpoena, the relevant language of that rule is the same as the language contained in Rule 26(b)(5)(A). Accordingly, that case is equally applicable to claims of privilege made in connection with

Waldman's log, as revised by Bryan, is sufficient to meet this requirement.  As revised, the log generally identifies the date of the document, the individuals involved in the communication, and the nature of the privilege being asserted.  (See Johnson Decl., Ex. 6).  In most instances, it also identifies the author and recipient, as well as the subject matter of the communication.  (See id.).  Additionally, Bryan has added a column describing the relationship between the documents contained in the Waldman log and the documents contained in Bryan's log.  For instance, Bryan has specified whether the documents on Waldman's log are the same or similar to specific documents set forth in Bryan's log, and whether they consist of drafts of documents contained in the Bryan log.[7] (See id.).  Such information is adequate to describe the materials to which the claims of privilege adhere.

Even assuming Waldman's log remains insufficient to enable ChemWerth to assess its claims of privilege, this court finds that any deficiencies have been remedied by the affidavits submitted by Bryan in opposition to the motion to compel.  Not only do

---

ordinary discovery.

[7] ChemWerth contends that Bryan's efforts to correlate the entries on the Waldman log with the entries on its own log are unhelpful.  For example, ChemWerth notes that "the first entry on the revised Waldman log states that it is 'Same as BCPRIV154A[,]'" but it argues that the two documents do not match up. (Def. Reply Mem. at 10-11).  However, this court's review of those entries reveals otherwise.  As described on the Waldman log, the document at issue was created by Dr. Waldman on January 24, 2012, and was received by Bryan's President, Bryan Abrano. (See Johnson Decl., Ex. 6 at 1).  Similarly, Bryan's revised log indicates that document number BCPRIV154A was created by Dr. Waldman on January 24, 2012, and was received by both Abrano and Bryan's counsel, Attorney Flanagan.  (See Johnson Decl., Ex. 1 at 42).  Therefore, it appears that the documents are the same even thought they are described slightly differently on the two logs.

those affidavits provide a detailed description of the circumstances under which the documents contained in the log were created, but they also show that Attorney Johnson conducted his own review of Waldman's privilege log and the documents listed therein. (Johnson Decl. ¶ 24).  To the extent Attorney Johnson determined that documents were improperly withheld, he altered the log to indicate that those documents would be produced.  (See Johnson Decl., Ex. 6).  To the extent he determined that the documents remained protected by the work product doctrine and/or attorney-client privilege, he specified the privilege and correlated the documents with the documents listed in Bryan's log.  (See id.).  Under these circumstances, this court is satisfied that the parties have taken sufficient steps to inform ChemWerth as to the basis for their claims of privilege and to preserve those claims.  Accordingly, this court concludes that Bryan's and Waldman's claims of work product have not been waived.

### C.    ChemWerth's Claim of Substantial Need and Undue Hardship

The defendant asserts that even if Bryan can show that work product protection applies and has not been waived, ChemWerth is entitled to production of any "fact" work product because it has demonstrated both that it has a substantial need for the documents and is unable to obtain substantially equivalent information without undue hardship. (Def. Mem. at 18-20).  Again, this court disagrees.  Even assuming all of the documents at issue constitute fact work product, which may be discoverable upon a showing of substantial need and undue hardship, this court finds that ChemWerth has failed to make the necessary showing.

-22-

"Most courts distinguish between 'opinion' work product, which includes 'materials that contain the mental impressions, conclusions, opinions, or legal theories of an attorney,' and 'ordinary' [or fact] work product, which includes everything else that is eligible for protection as work product, and accord greater protection to the former." In re Grand Jury Subpoena, 220 F.R.D. at 144 (quoting In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1014-15 (1st Cir. 1988)). This distinction is consistent with Rule 26(b)(3), which "permits discovery of ordinary work product upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means[,] but instructs courts to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation." Id. (quotations and citations omitted).  It also "makes sense, because more than with ordinary work product, '[t]he substantive content of . . . so called opinion work product is almost certainly of no legitimate use to an opponent.'"  Id. (quoting Fleet Nat'l Bank v. Tonneson & Co., 150 F.R.D. 10, 14-15 (D. Mass. 1993)).

In the instant case, Bryan contends that all of the documents at issue constitute opinion work product, which must be protected and is therefore not discoverable.  (Pl. Opp. Mem. at 8).  On the other hand, ChemWerth argues that the descriptions of various documents listed on Bryan's and Waldman's privilege logs suggest that the contents of those documents are factual.  (Def. Mem. at 19).  This court finds that it is unnecessary to

determine which type of work product is contained in the challenged documents. Even assuming ChemWerth is correct and the documents contain ordinary, or "fact," work product, the defendant has not demonstrated that their production should be compelled.

"Generally, courts deny the discovery of an adversary's work product on the basis of substantial need where a party may obtain information through other means." Clark v. Edison, Civil Action No. 09-40040-FDS, 2010 WL 3245428, at *2 (D. Mass. Aug. 16, 2010). "Discovery of work product will therefore be denied where the party seeking discovery can obtain the information by taking the deposition of witnesses." Colonial Gas Co. v. Aetna Cas. & Sur. Co., 139 F.R.D. 269, 275 (D. Mass. 1991). ChemWerth argues that it has a substantial need to obtain the challenged documents because "they are vital to ChemWerth's claims and defenses in this action, in which ChemWerth alleges that Bryan Corp. and/or Waldman, alone or in collusion, planned an illegal scheme to blame ChemWerth for Bryan Corp. and/or Waldman's failure to develop a FDA-approvable TS product." (Def. Mem. at 20). However, ChemWerth has not explained why it could not obtain this information through depositions of fact witnesses. According to ChemWerth's own allegations, Bryan's President, Abrano, and Dr. Waldman are the key players in the alleged illegal scheme. (See Countercl. ¶¶ 54-124, 154-56). Apparently, ChemWerth has already deposed Abrano, and it intends to depose Dr. Waldman as well. (See Pl. Opp. Mem. at 9-10). Therefore, it has not established that it has a substantial need for the documents.

ChemWerth's suggestion that Dr. Waldman is unlikely to testify truthfully because he has been named as a third-party defendant in the case is entirely unpersuasive.  (See Def. Mem. at 20).  There is nothing in the record before this court to suggest that Dr. Waldman or any other witness would lie under oath simply because he has an interest in the outcome of the litigation.  Accordingly, ChemWerth's challenge to Dr. Waldman's credibility provides no support for its claim of substantial need.

The defendant's assertion that it has a substantial need for Bryan's and Waldman's work product is further undermined by the fact that the scheme in which those parties allegedly participated occurred entirely, or almost entirely, before any of the challenged documents were created.  As ChemWerth alleges in its counterclaims, Bryan and Waldman first approached the defendant to inquire about the purchase of TS products on December 5, 2005, and Bryan filed its application with the FDA on March 15, 2010. (Countercl. ¶¶ 18, 107).  Therefore, any scheme to blame ChemWerth for the failure to obtain FDA approval of Bryan's TS products occurred well before March 2011, when Bryan retained MLA to provide it with legal advice concerning its dispute with ChemWerth.  (See Flanagan Decl. ¶ 4).  Because the documents at issue were not created until after MLA began working on the matter, ChemWerth cannot show that they are necessary to support it claims and defenses.

ChemWerth's assertion that it will suffer undue hardship if it is forced to obtain substantially equivalent information by other means is equally unconvincing.  "Neither inconvenience nor expense constitute sufficient cause to find undue hardship."  Colonial

-25-

Gas Co., 139 F.R.D. at 275.  Therefore, such matters as travel or deposition costs are not sufficient to establish undue hardship.  Moreover, nothing in this case appears to present any special circumstances that would preclude ChemWerth from obtaining all of the relevant information through the ordinary discovery process.  Furthermore, for the reasons discussed above, ChemWerth's concerns about Dr. Waldman's veracity are entirely insufficient to establish undue hardship.  Therefore, this court concludes that ChemWerth is not entitled to production of the documents.

## IV.  CONCLUSION

For all the reasons detailed herein, this court finds that the documents ChemWerth is seeking are protected from disclosure under the work product doctrine.  Therefore, "ChemWerth's Motion to Compel Production of Documents Improperly Withheld as Privileged by Bryan Corp., Waldman Biomedical Consultancy, Inc. and Dr. Alan A. Waldman" (Docket No. 98) is DENIED.

   / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge